MARGARET HART EDWARDS, Bar No. 65699
PHILIP ROSS, Bar No. 90042
LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940

Attorneys for Defendants
PANERA BREAD COMPANY, A DELAWARE CORPORATION; AND PANERA LLC, A DELAWARE LIMITED LIABILITY COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATI JOHNS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANERA BREAD COMPANY, a Delaware corporation; and PANERA LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:08-cv-1071-MEJ<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Time: 10:00 a.m.<br>Date: April 24, 2008<br>Place: Courtroom B, 15th Floor |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................................1

II.  STATEMENT OF RELEVANT FACTS ............................................................................2

    A.   The Parties and the Present Claims.............................................................................2

    B.   Panera Bread Restaurants and General Managers ......................................................3

    C.   Anticipated Evidence...................................................................................................4
        1.   Witnesses ..........................................................................................................5
        2.   Documentary Evidence ....................................................................................7

    D.   Congestion in the Relevant Districts...........................................................................8

III. LEGAL ARGUMENT...........................................................................................................8

    A.   Relevant Standard .......................................................................................................8

    B.   Transfer to the Eastern District of Missouri ...............................................................9
        1.   Plaintiff's Choice of Forum ..............................................................................9
        2.   Convenience to Witnesses ..............................................................................10
        3.   Convenience to the parties .............................................................................12
        4.   Ease of Access to Sources of Proof ................................................................12
        5.   Familiarity with Governing Law ....................................................................13
        6.   Court Congestion ............................................................................................15
        7.   Local Interest ..................................................................................................15
        8.   Forum Selection Clause ..................................................................................16

IV.  CONCLUSION....................................................................................................................16

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

i

# TABLE OF AUTHORITIES

## CASES

Alexander v. Franklin Res., Inc.,
    NO. C 06-7121 SI, 2007 WL 518859, *3 (N.D.Cal. Feb 14, 2007) .................................. 10

Bell v. Farmers Ins. Exchange,
    87 Cal. App. 4th 805, 816 (2001) ................................................................................ 14

Bereola v. Holland Am. Line, Inc.,
    No. C 07-03770 SI, 2008 WL 149131 (N.D.Cal. January 14, 2008) ............................. 16

Bothell v. Phase Metrics, Inc.,
    299 F.3d 1120, 1129 (9th Cir. 2002) ............................................................................. 14

Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.,
    No. C 06-3450 JF (RS), 2006 WL 2374738, *5 (N.D. Cal. August 16, 2006) ............... 13

Evancho v. Sanofi-Aventis U.S. Inc.,
    No. C 07-00098-SI, 2007 WL 1302985, *1 (N.D. Cal. May 3, 2007) ............................. 9

Foster v. Nationwide Mut. Ins. Co., NO. C 07-04928 SI, 2007 WL 4410408, *2 (N.D.
    Cal. Dec 14, 2007) ........................................................................................................... 9

Hoefer v. U.S. Dep't of Commerce, No. C 00 0918 VRW, 2000 WL 890862, *2
    (N.D.Cal. Jun 28, 2000) .................................................................................................. 9

In re Funeral Consumers Antitrust Litigation,
    No. C 05-01804 WHA, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005) ........................ 11

Italian Colors Restaurant v. Am. Express Co.,
    No. C 03-3719 SI, 2003 WL 22682482, *3-4 (N.D. Cal. Nov. 10, 2003) ..................... 10

Jarvis v. Marietta Corp.,
    No. C 98-4951 MJJ, 1999 WL 638231, *5 (N.D. Cal. Aug 12, 1999) .......................... 13

Panetta v. SAP Am., Inc., No. C0501696RMW, 2005 WL 1774327 (N.D.Cal. July
    26, 2005) ....................................................................................................................... 16

Piper Aircraft Co. v. Reyno,
    454 U.S. 235, 254 (1981) ................................................................................................ 8

Saleh v. Titan Corp.,
    361 F.Supp.2d 1152, 1160 (S.D. Cal. 2005) ................................................................. 10

Stewart v. AT & T Inc.,
    No. C 06-7363 SI, 2007 WL 1031263, *3 (N.D. Cal. April 03, 2007) ......................... 15

Strigliabotti v. Franklin Res., Inc.,
    No. C 04-0883 SI, 2004 WL 2254556, *5 (N.D. Cal. Oct 05, 2004) ............................ 14

Tropos Networks, Inc. v. IPCO, LLC,
    No. C 05-04281 JSW, 2006 WL 1883316, *4 (N.D.Cal. July 07, 2006) ...................... 15

Unisys Corp. v. Access Co., Ltd.,
    No. C05-3378-THE, 2005 WL 3157457 (N.D.Cal. November 23, 2005) .................... 16

Van Dusen v. Barrack,
    376 U.S. 612, 616 (1964) ................................................................................................ 8

Williams v. Bowman,
    157 F.Supp.2d 1103, 1105 (N.D. Cal. 2001) ................................................................... 9

Williams v. Sears Roebuck & Co.,
    No. C97-3794 FMS, 1998 WL 61307, *2 (N.D. Cal. Jan 29, 1998) ............................. 12

## TABLE OF AUTHORITIES
### (continued)

**STATUTES**

28 U.S.C. § 1391 .................................................................................................................... 8

28 U.S.C. § 1404(a) ........................................................................................................ passim

29 U.S.C. § 201 .................................................................................................................... 14

29 U.S.C. § 216(b) .................................................................................................................. 3

Fed. R. Civ. P. 23 ................................................................................................................ 3, 4

**OTHER AUTHORITIES**

I.W.C. Wage Order § 1(A)(1)(e) ......................................................................................... 14

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

ii

# NOTICE OF MOTION AND MOTION TO TRANSFER VENUE

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, April 24, 2008 at 10:00 a.m., or as soon thereafter as counsel can be heard in Courtroom B, 15th Floor of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Panera Bread Company and Panera LLC will move to transfer this action to the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. § 1404(a), on the grounds that the Eastern District of Missouri would be more convenient for the parties and the witnesses, and such transfer would be in the interest of justice.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Courtney Higgins and Margaret Hart Edwards, Esq., all pleadings and papers on file in this litigation, and upon such other matters as may be presented to the Court at or before the time of the hearing.

## RELIEF REQUESTED

Panera Bread Company and Panera, LLC move the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this action from this District to the Eastern District of Missouri, Eastern Division, located in St. Louis, Missouri.

## MEMORANDUM OF POINT AND AUTHORITIES

I.   INTRODUCTION

Plaintiff Pati Johns purports to bring a nation-wide class action lawsuit (with a pendent California sub-class) against Defendants Panera Bread Company and Panera LLC,[1] on behalf of some 1,400 current and former Panera Bread bakery-cafe General Managers. Yet Plaintiff does not bring this action in the district where the relevant witnesses or evidence are located, nor where both Defendants may be found, the Eastern District of Missouri. Nor does Plaintiff bring this action in a district close to the vast majority of putative class members. Instead, Plaintiff brings this action in a district where a tiny percent of the putative class members reside—even though the overwhelming majority of possible class members can be found in the Midwestern or Eastern portions of the

---

[1] Panera Bread Company and Panera, LLC will be referred to collectively in this Motion as the "Company" or as "Defendants."

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

1

country. Rather than try this case in a district over 1,700 miles from the relevant witnesses and sources of proof, and far from the overwhelming number of putative class members, the Court should transfer this case to a far more convenient venue, the Eastern District of Missouri.[2]

## II. STATEMENT OF RELEVANT FACTS

### A. The Parties and the Present Claims

Defendant Panera Bread Company is a national restaurant chain committed to providing distinctive menu offerings centered on fresh artisan bread. (Declaration of Courtney Higgins ("Higgins Decl."), ¶ 3). At present, the Company directly owns and operates 509 bakery-cafes in 25 states. (Id. ¶ 4). Defendant Panera, LLC is a wholly-owned subsidiary of Panera Bread Company. (Id. ¶ 5). Both entities are headquartered in Richmond Heights, Missouri, a suburb of St. Louis, which is located approximately 7 miles from the courthouse for the Eastern District of Missouri, Eastern Division. (Id. ¶ 5; Declaration of Margaret Edwards ("Edwards Decl.") ¶ 4).

The Company was originally named Au Bon Pain Company, Inc. (Higgins Decl. ¶ 7). In 1993, Au Bon Pain Company, Inc. acquired the St. Louis Bread Company, a chain of bakery-cafes in Missouri. (Id.) The St. Louis Bread Company bakery-cafes were subsequently re-branded as Panera Bread. (Id.) In May 1999, all of Au Bon Pain Co., Inc.'s business units were sold, with the exception of Panera Bread, and the company was officially renamed Panera Bread. (Id.)

Plaintiff Johns worked at a Panera Bread bakery-cafe in Antioch, California as a General Manager ("GM") from March 2005 through January 2008. (Complaint ¶ 6). In conjunction with her employment as a GM, Plaintiff executed two agreements with the Company: one entitled "First Amended and Restated Joint Venture General Manager Compensation Plan" (Higgins Decl., Exhibit A), and the other "Employment Agreement JV General Manager" (Higgins Decl., Exhibit B). These documents each contain a forum selection clause, mandating that any disputes arising between the signatories be brought in the State of Missouri. (Id.)

---

[2] By bringing the instant motion, Defendants reserve any defenses that they may have against Plaintiff's claims. Further, Defendants maintain that class certification is not appropriate for Plaintiff's allegations. The factual assertions and legal arguments contained herein are not intended to waive any such defenses, nor intended to imply that a certified class would be proper.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

2

Plaintiff purports to bring a nation-wide class action on behalf of all current and former Panera Bread General Managers under the Fair Labor Standards Act ("FLSA"), pursuant to 29 U.S.C. § 216(b), challenging the Company's classification of GM's as exempt from overtime requirements. (Complaint ¶ 21). In addition, Plaintiff also seeks to bring a pendent, state-law action under Fed. R. Civ. P. 23 on behalf of a sub-class of General Managers in California. (Complaint ¶ 22).

B. **Panera Bread Restaurants and General Managers**

There are 509 bakery-cafes directly owned and operated by the Company across the country.[3] (Higgins Decl. ¶ 4). Only 32 of these bakery-cafes are located in California, 17 (or 3.3 percent) of which are based in Northern California. (Id. ¶ 9). In total, there are 48 Company-owned bakery-cafes on the entire West Coast. (Id. ¶ 11).

In contrast, there are 44 Company-owned bakery-cafes in Missouri alone. (Id. ¶ 12). The greatest concentration of Company-owned bakery-cafes is located in the Midwest: close to 34 percent of all Company-owned bakery-cafes—185—are located in Missouri, Illinois, Indiana and Michigan. (Id.). The Company-owned bakery-cafes are distributed as follows:

| Alabama | 13 | Illinois | 68 | Michigan | 43 | North Carolina | 12 | South Dakota | 1 |
|---|---|---|---|---|---|---|---|---|---|
| California | 32 | Indiana | 30 | Minnesota | 22 | Ohio | 10 | Tennessee | 12 |
| Connecticut | 11 | Iowa | 2 | Missouri | 44 | Oregon | 5 | Texas | 12 |
| Florida | 34 | Kentucky | 12 | Nebraska | 10 | Pennsylvania | 24 | Virginia | 49 |
| Georgia | 10 | Massachusetts | 4 | New York | 30 | South Carolina | 8 | Washington | 11 |

(Id.).

Each Panera Bread bakery-cafe typically has one General Manager who manages its operations. (Id. ¶ 13). There are therefore 509 General Managers working at Company-owned

---

[3] There are a number of Panera bakery-cafes owned and operated by franchisees that do not fall within the scope of this litigation. (Higgins Decl. ¶ 8).

bakery-cafes, distributed across the country in the same fashion as the above list. (Id. ¶ 13). Thus, only 32 GM's currently reside in California, 17 of whom are in Northern California. (Id. ¶ 14).

The Company did not open its first Company-owned bakery-cafe in California until 2005. (Id. ¶ 15). In fact, 16 of the 32 California bakery-cafes were not opened until 2007. (Id.). As a result, there has been limited turnover among the GM's working in the California bakery-cafes and, thus, few former employees to include in the potential class. (Id. ¶ 16). Adding all of the current and former GM's in California together, the sub-class Plaintiff seeks to represent may only approach 40 people. (Id. ¶ 17).

In contrast, the Company has operated bakery-cafes in Missouri and the nearby states of Illinois, Indiana and Michigan since 1999. (Id. ¶ 18). In Missouri alone, the Company operates 44 bakery-cafes and estimates that, when adding current and former GM's together over the past three years, there are approximately 150 putative class members there. (Id. ¶ 19). The Company operates approximately 185 bakery-cafes in the Missouri, Illinois, Indiana and Michigan region, and when adding current and former GM's together over the past three years, the Company estimates there may be as many as 500 putative class members in these states. (Id. ¶ 20). The numbers are even greater if the locations and putative class members in Ohio and Minnesota are included. In the end, of the estimated putative class of approximately 1,400 people across the country, the greatest concentration is located in the Midwest. (Id. ¶ 21).

### C. Anticipated Evidence

Defendants' Operations, Information Technology, Accounting, Purchasing/Supply Chain, Human Resources (including compensation and benefits), Training, and Security departments are all based in Richmond Heights, Missouri, as are most of the people in charge of these departments. (Id. ¶¶ 22). As a result, the policies generated by these departments are largely developed and enforced by personnel located in Richmond Heights, Missouri. (Id.). Documents (both electronic and hard copy) are, for the most part, stored at headquarters or in nearby servers. (Id. ¶ 23).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

4.

**1. Witnesses**

It is reasonably foreseeable that many of the Company's key employees will be called to testify at trial. (Id. ¶ 24). The list of such individuals likely to testify at trial include:[4]

| Name and Location | Title | Subject Matter of Testimony |
|---|---|---|
| Rebecca Fine (Richmond Heights, MO) | Senior Vice President, Chief People Officer | Exempt classification for GM's; policies and procedures regarding overall human resources programs and functions |
| Marianne Graziadei (New York, New York) | Vice President, Operation Tools and Systems | Actual operating systems and procedures of the bakery-cafes |
| Michael Gustafson (Richmond Heights, MO) | Director, Technical Operations | Policies and procedures regarding computer systems, recordkeeping and data storage |
| Stefanie Marie Jerry (Richmond Heights, MO) | Senior Manager, Compensation | Policies and procedures regarding GM compensation |
| Jeffrey Levitt (Richmond Heights, MO) | Senior Manager, Asset Protection | Bakery-cafe security operations and policies and loss prevention |
| William H. Simpson (Dallas, TX) | Senior Vice President, Chief Company & JV Operations | Overall strategic goals of retail operations nationally |
| Patricia Tures (Needham, MA) | Director, Human Resources Services for Operations | Duties and responsibilities of GM's; exempt classification for GM's; GM compensation; policies and procedures regarding overall human resources functions within retail operations |
| Carl Tibbetts (Richmond Heights, MO) | Director, Payroll | Policies, procedures and implementation of GM compensation programs |
| Cathy Watkins (Richmond Heights, MO) | Vice President, Training | GM management training policies, procedures and development; duties and responsibilities of GM's |

(Id. ¶ 25).[5]

---

[4] Defendants reserve the right to amend this witness list prior to trial.
[5] Four Vice Presidents of Retail Operations—Irene Cook (Needham, MA), Richard Crannick (Richmond Heights, MO), Mark Davis (Denver, CO) and Christopher Priebe (Detroit, MI), along with three Senior Human Resource Managers—Steve Haydu (Sacramento, CA), Marc Fairman (Richmond Heights, MO) and Julie Hollenbeck (Detroit, Michigan) may possess information relevant to this case as well. (Higgins Decl. ¶ 26).
Needham is only approximately 1,180 miles from St. Louis, and 3,100 miles from San Francisco. Detroit is approximately 440 miles from St. Louis, and 2,070 miles from San Francisco. Denver is approximately 770 miles from St. Louis and 970 miles from San Francisco. (Id.; Edwards Decl. ¶ 2).

The majority of the witnesses listed above work at the Company's Richmond Heights, Missouri headquarters, near St. Louis (8 out of 12). (Id.) Others work in offices that are closer to St. Louis than to San Francisco. (Id.) The approximate distances from each employee's work location to San Francisco and St. Louis, along with approximate flight times, are listed below:

| Name and Location | Approximate Distance to San Francisco (miles) | Flight Time to San Francisco | Approximate Distance to St. Louis (miles) | Flight Time to St. Louis |
|---|---|---|---|---|
| Rebecca Fine (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |
| Marianne Graziadei (New York, New York) | 2,580 | 6 hours 20 minutes | 890 | 2 hours 25 minutes |
| Michael Gustafson (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |
| Stefanie Marie Jerry (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |
| Jeffrey Levitt (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |
| William H. Simpson (Dallas, TX) | 1,480 | 3 hours 25 minutes | 550 | 1 hour 40 minutes |
| Patricia Tures (Needham, MA) | 3,100 | 6 hours 25 minutes | 1,180 | 3 hours |
| Carl Tibbetts (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |
| Cathy Watkins (Richmond Heights, MO) | 1,730 | 4 hours 15 minutes | 7 | n/a |

(Higgins Decl. ¶ 26; Edwards Decl. ¶¶ 2-5).

Traveling from their respective homes and workplaces to San Francisco for this trial would cause substantial disruption to these witnesses' personal and professional lives. (Higgins Decl. ¶ 27). Further, many of the potential witnesses' job duties are essential to the Company's day-to-day business operations. (Id. ¶ 28). The extended and simultaneous absence of these witnesses from their offices to testify for this case would cause material harm to the Company. (Id.). For example,

as a restaurant chain based on serving fresh, high-quality artisan bread, the Company's bakery-cafes rely upon the prompt delivery of bread dough, produced every morning by one of thirteen regional baking centers. (Id. ¶ 29). The extended absence of senior management such as Simpson and Fine, at or about to the same time, could negatively impact the efficient production of this essential element to the Company's business. (Id. ¶¶ 29, 30).

### 2. Documentary Evidence

While it is difficult to identify trial exhibits at this early stage of the litigation, it is reasonably foreseeable that the following categories of documents may be relevant to Plaintiff's claims or to the Company's defenses, each of which are located at the Company's Richmond Heights, Missouri headquarters, or stored on servers in the St. Louis, Missouri area:

- GM payroll records
- GM personnel files
- Human resources policies, analyses and records
- GM compensation and benefit plans
- Training materials
- Point-of-sale records
- Inventory and order management records

(Id. ¶¶ 31, 32). Given the size of the putative class here, these documents may total thousands of pages. (Id. ¶ 33).

The custodians for these documents all work at the Company's headquarters in Missouri. (Id. ¶ 34). Transporting these documents from St. Louis to San Francisco for trial would impose a substantial burden on the Company and would disrupt the personal and professional lives of the respective custodians. (Id. ¶¶ 35, 36).

//
//
//

D.  **Congestion in the Relevant Districts**

The Eastern District of Missouri's docket is considerably less busy than that of the Northern District of California, and cases tend to be resolved in a shorter period of time:

| Court | Cases Pending | Cases per Judge | Cases over 3 years old | Average Time, Filing to Trial |
|---|---|---|---|---|
| N.D. California | 9,005 | 643 | 393 | 24.9 months |
| E.D. Missouri | 2,514 | 314 | 38 | 22.5 months |

(http://www.uscourts.gov/cgi-bin/cmsd2007.pl) (data from 2007).

III.  **LEGAL ARGUMENT**

A.  **Relevant Standard**

28 U.S.C. § 1404(a) allows a court to "transfer any civil action to any other district or division where it might have been brought," "[f]or the convenience of parties and witnesses, in the interest of justice." This statute "was designed as a federal housekeeping measure, allowing easy change of venue within a unified federal system." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981). Section 1404(a)'s purpose is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

The present action could have been brought in the Eastern District of Missouri, and, therefore, satisfies the first section 1404(a) element. An action may be brought in any District in which a defendant resides. 28 U.S.C. § 1391. A corporate defendant resides in any District in which it is subject to personal jurisdiction. Id. § 1391(c). Because Defendants each maintain their headquarters in the Eastern District of Missouri, personal jurisdiction, and therefore venue, is proper in that District.

//

//

//

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

8

### B. Transfer to the Eastern District of Missouri

Section 1404(a) lists three broad elements for a court to weigh in deciding to transfer a case to another district where it might have been brought: the convenience of the parties, the convenience of the witnesses, and the interests of justice. 28 U.S.C. § 1404(a); see Williams v. Bowman, 157 F.Supp.2d 1103, 1105 (N.D. Cal. 2001). This Court has further specified eight factors to consider:[6]

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims,[7] (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

Williams, 157 F.Supp.2d at 1105; see Foster v. Nationwide Mut. Ins. Co., NO. C 07-04928 SI, 2007 WL 4410408, *2 (N.D. Cal. Dec 14, 2007) (same); Evancho v. Sanofi-Aventis U.S. Inc., No. C 07-00098-SI, 2007 WL 1302985, *1 (N.D. Cal. May 3, 2007) (same). Because each of these factors weighs in the Company's favor, a transfer to the Eastern District of Missouri is warranted.

#### 1. Plaintiff's Choice of Forum

Since the instant matter is a nationwide class action, Plaintiff's selection of this District as her forum is of no moment. Though normally a court will afford some deference to a plaintiff's choice of forum, "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight." Lou, 834 F.2d at 739. "Where there are hundreds of potential plaintiffs, all of whom could with equal show of right, go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." Hoefer v. U.S. Dep't of Commerce, No. C 00 0918 VRW, 2000 WL 890862, *2 (N.D.Cal. Jun 28, 2000) (quoting Koster v Am. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). It stands to reason

---

[6] The Ninth Circuit has not clearly enunciated a set list of factors in the section 1404(a) context. Compare Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (offering eight factors as an example), Lou v. Belzberg, 834 F.2d 730, 739 (examining four factors) and Decker Coal Co. v. Com. Edison Co., 805 F.2d 834, 843 (listing four "private factors" and five "public factors"). Because the Williams factors closely fit the facts of the instant dispute, Defendants will apply them here.

[7] Defendants are unaware at this time of any other similar litigation against them. Therefore, this factor will not be analyzed here.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)                                                      9

that such a claim is especially weakened when an insignificant fraction of a putative class resides in the transferor district, as is true in the instant case.

It is estimated that no more than 40 putative class members (approximately 2.8 percent) reside in California, and even less reside within the Northern District of California. This number pales in comparison to the number of possible class members who reside outside this district. More specifically, Missouri itself may host as many as 150 putative class members and the combined states of Missouri, Michigan, Illinois and Indiana include as many as 500 putative class members. In reality, most putative class members reside in the Midwestern portion of the country, and are thousands of miles away from this Court.

Given that Plaintiff seeks to certify a nation-wide class, the overwhelming majority of who reside outside this District, little weight, if any, should be given to Plaintiff's choice of forum. See Foster, 2007 WL 4410408 at *2-3 (putative class representative's choice of forum given *no* weight); Alexander v. Franklin Res., Inc., NO. C 06-7121 SI, 2007 WL 518859, *3 (N.D.Cal. Feb 14, 2007) (giving less significance to putative nationwide class representative's choice of forum); Italian Colors Restaurant v. Am. Express Co., No. C 03-3719 SI, 2003 WL 22682482, *3-4 (N.D. Cal. Nov. 10, 2003) (disregarding putative class representative's choice of forum because "interchangeable plaintiffs" could be found in "every district court in the nation"); Hoefer, 2000 WL 890862 at *2 (discounting plaintiff's choice of forum because "the members of the purported class are numerous and are located throughout the nation").

### 2. Convenience to Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." Saleh v. Titan Corp., 361 F.Supp.2d 1152, 1160 (S.D. Cal. 2005). Because trying this case in the San Francisco area would be unduly inconvenient for the vast majority of the witnesses likely to testify at trial, most of whom live and/or work in the St. Louis, Missouri area—over 1,700 miles away from this courthouse—this matter should be transferred.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

10

This Court vividly described the hardships imposed on out-of-town witnesses in In re Funeral Consumers Antitrust Litigation, No. C 05-01804 WHA, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005). The Court observed that:

> [witnesses] must take time out of their work and private time to travel to and from the place of trial, to live away from home and to wait around windowless corridors on call to testify. Back home, they have children to get to school, elderly parents to care for, jobs to do and lives to lead—all of which must be managed somehow or put on hold. Although lawyers tend to underestimate this burden, it is genuine, all the more so in a distant city. Even where a witness is an employee of a party and will be paid, the disruption is still a hard fact. The expenses of transportation, housing and meals, even if borne by a party, are nonetheless authentic outlays.

Id. at *4.

Trying this case in this District would compel at least 12 potential witnesses to endure these very same tribulations. These testifying witnesses would be required to travel across the country, in some cases over 3,000 miles, leaving behind their families and work for several days. On the other hand, if tried in St. Louis, the majority of these witnesses would each be minutes from the courthouse and, therefore, able to testify without serious disruption to their lives or loved ones. The balance of the witnesses who do not live in the St. Louis area would have significantly shorter distances to travel as well. The convenience to these testifying witnesses strongly counsels towards transfer. See Foster, 2007 WL 4410408 at *3 (finding transferee court in Ohio more convenient where defendant's headquarters and corporate witnesses were located in Columbus); Evancho, 2007 WL 1302985 at *3 (transferring case to district where defendant's headquarters and testifying employees were found).

Likewise, the witnesses Plaintiff is likely to call will probably hail from states closer to the Eastern District of Missouri than to this District. Plaintiff will undoubtedly require testimony from other General Managers regarding their respective responsibilities. See Evancho, 2007 WL 1302985 at *3 (noting in FLSA case that "a significant number of class members will be called as witnesses, to provide testimony about the nature of the jobs at issue"). The vast majority of current General Managers live or work in the Midwestern or Eastern half of the country (far closer to St. Louis than San Francisco), while only 32 live in California. Further, the most experienced General Managers, who possess the most comprehensive knowledge of job duties, policies and procedures, will not be

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

11

1  found in California (where one-half of the bakery-cafes have been open for one year or less), but in
2  Missouri or other Midwest states. It would be far more convenient for these potential witnesses to
3  travel to St. Louis than San Francisco.. See id.; Foster, 2007 WL 4410408 at *4 (convenience to
4  putative class members, most of whom lived closer to transferee district, favored transfer).

### 3.   Convenience to the parties

The convenience of the parties compels transfer as well. Defendants' headquarters are located near St. Louis, as are most of the employees who may testify. Many of these testifying employees are high-level corporate managers, who play crucial roles in the Company's operations, and whose day-to-day presence at Panera headquarters is essential. Beyond any inconvenience to the witnesses themselves, the absence of these employees from the Company's headquarters would significantly impair the Company's ability to run its business effectively. Asking these employees to take off substantial periods of time from their jobs to travel to California for this trial would therefore cause material harm, and real inconvenience, to the Company.

Conversely, any possible inconvenience that Plaintiff may experience, either as a party or as a witness herself, is far outweighed by the inconvenience that the Company, its employees, or the other putative class members would avoid by transferring to the Eastern District of Missouri. See Williams v. Sears Roebuck & Co., No. C97-3794 FMS, 1998 WL 61307, *2 (N.D. Cal. Jan 29, 1998) ("any inconvenience experienced by West Coast plaintiffs and their witnesses from litigating in Illinois will likely be overcome by the convenience of a closer forum for East Coast plaintiffs and their witnesses in this nationwide action"). Indeed, the office of Plaintiff's own lead counsel, George A. Hanson, Esq., is in Kansas City, Missouri, obviously closer to St. Louis than San Francisco. In an ironic twist, transferring the case to the Eastern District of Missouri will also minimize the inconvenience suffered by the lead counsel for Plaintiff to litigate and try this case.

### 4.   Ease of Access to Sources of Proof

The location of the relevant sources of proof also tips the balance towards transfer to Missouri. As this Court recently recognized, "the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found." Foster, 2007 WL 4410408 at *6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

12

The allegations in the Complaint address Defendants' operations procedures, compensation and payroll policies, training procedures and materials, and recordkeeping practices, to name a few. To assess these claims, the factfinder will need to undertake extensive review of these records, potentially stretching back up to three years, for hundreds of General Managers. When accounting for electronically stored documents and e-mails, the documentary evidence for this case could reach thousands of pages.

This multitude of documents are either stored as paper copies at the Company's Richmond Heights, Missouri headquarters, or electronically maintained on servers there.[8] Further, the respective custodians of these records work and live in Missouri. See Evancho, 2007 WL 1302985 at *4 (transferring case where "defendant made most, if not all of the relevant personnel decision in New Jersey, at its headquarters"). For her part, Plaintiff will likely have few, if any, documents of her own in this District, particularly since the bulk of the putative class members live outside of California. See Foster, 2007 WL 4410408 at *6.

Since most of the documents to be used in this case are located at the Company's headquarters in the Eastern District of Missouri, a transfer there is warranted. See id.; Evancho, 2007 WL 1302985 at *4; Clarus Transphase Scientific, Inc. v. Q-Ray, Inc., No. C 06-3450 JF (RS), 2006 WL 2374738, *5 (N.D. Cal. August 16, 2006) (transferring action because documentary evidence was located in the transferee forum); Jarvis v. Marietta Corp., No. C 98-4951 MJJ, 1999 WL 638231, *5 (N.D. Cal. Aug 12, 1999) (transferring case where it "would be markedly easier to obtain these documents if the trial was held in [the transferee forum]").

### 5. Familiarity with Governing Law

Plaintiff will likely trumpet the fact that the Complaint asserts several counts under California law as a reason to keep this case in this District. However, because this case is, at bottom, a federal FLSA claim covering a nation-wide class, and because the judges in the Eastern District of Missouri are equally well equipped to resolve the legal issues present here, the mere presence of

---

[8] The fact that some documents may be stored electronically does not render the ease of access to evidence element irrelevant. In Foster, 2007 WL 4410408 at *6, this Court acknowledged that while "developments in electronic conveyance have reduced the cost of document transfer somewhat," the presence of a considerable number of documents in the transferee venue still weighed in favor of transfer. See also Italian Colors, 2003 WL 22682482 at *5 (same).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

13

these pendent state-law claims should not prevent the transfer of this case, particularly since the percent of potential class members located in California is so small in comparison to potential class member located in other states.

The crux of this litigation is the putative nationwide class action brought under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The FLSA claims could extend to *hundreds* of individuals who work or reside in more than 25 states. In contrast, the state-law claims only apply to a small putative sub-class, which could number no more than approximately 40 persons total. At heart, this is putatively a nation-wide class action brought under a federal statute with state-law claims appended thereto. The "tail should not wag the dog. . . . If the main *federal* event is clearly better served in the [transferee district] than in San Francisco, the pendency of a supplemental state law claim should not override the indicated result." Funeral Consumers, 2005 WL 2334362, *6 (emphasis in original); see Hoefer, 2000 WL 890862 at *3 ( "When the gravamen of the case involves federal law, a state law claim is usually not a significant consideration on a motion to transfer venue").

There is also no reason to believe that a federal judge in Missouri will somehow be unable to apply California law to the facts here. See Strigliabotti v. Franklin Res., Inc., No. C 04-0883 SI, 2004 WL 2254556, *5 (N.D. Cal. Oct 05, 2004) ("The Court finds that [the transferee] court is fully capable of applying California law"). Moreover, in many respects California explicitly looks to federal regulations and caselaw in interpreting its overtime laws. See I.W.C. Wage Order § 1(A)(1)(e); Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1129 (9th Cir. 2002); Bell v. Farmers Ins. Exchange, 87 Cal. App. 4th 805, 816 (2001). Thus, many of the issues presented by these claims will already be familiar to a federal judge, or will overlap with plaintiff's primary FLSA claims.

Since the pendent state-law claims are a relatively minor aspect of this litigation, and because a judge in the Eastern District of Missouri is fully capable of resolving these legal issues, the presence of California law should not weigh at all in the Court's consideration of this motion, and certainly should not prevent the transfer of this case to a more convenient venue. See Strigliabotti, 2004 WL 2254556 at *5 (transferring case with pendent state claims); Funeral Consumers, 2005 WL 2334362, *6 (same); Hoefer, 2000 WL 890862 at *3 (same); cf. Foster, 2007 WL 4410408 at *6

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)                                                                14

(finding that governing law slightly weighed in favor of plaintiff, but nonetheless transferring case); Evancho, 2007 WL 1302985 at *4 (same).

### 6.  Court Congestion

The relative congestion of the transferee and transferor venues is a relevant consideration for a section 1404(a) motion. Williams, 157 F.Supp.2d at 1106. It is clear that the Eastern District of Missouri's dockets are dramatically less crowded than this District: it has 72 percent fewer cases, less than half the number of judges per case, and one-tenth the number of pending cases older than three years. Transferring this case could therefore help to ease the caseload of this Court, and result in an earlier resolution of the dispute.

### 7.  Local Interest

The state of Missouri's interest in adjudicating this matter within its borders also militates towards transferring this case. Plaintiff may argue that this case implicates singularly California interests because of the pendent state-law claims. However, the presence of these additional counts does not change the simple arithmetic here: that only 2.8 percent of the putative class resides in California, whereas more than 10 percent of the putative class—and 100 percent of the Defendants—are found in Missouri. Nor does it change the fact that the Company's relevant policies and practices were developed and promulgated in Missouri, or that the most important witnesses and evidence are located there. See Stewart v. AT & T Inc., No. C 06-7363 SI, 2007 WL 1031263, *3 (N.D. Cal. April 03, 2007) (finding that transferee district had greater local interest because defendant resided there, and because policy at issue was administered there); Tropos Networks, Inc. v. IPCO, LLC, No. C 05-04281 JSW, 2006 WL 1883316, *4 (N.D.Cal. July 07, 2006) (California's interest in protecting its citizens was outweighed by transferee district's interest in regulating its own corporations); Jarvis, 1999 WL at 638231 at *7 ("given that most of the documentary evidence, witnesses and actions at issue in this case are, or occurred in, New York, New York has a greater local interest in the controversy at issue than does California").

//

//

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

15

### 8. Forum Selection Clause

Finally, the presence of a forum selection clause in the agreement Plaintiff made with the Company favors transfer. "The presence of a forum selection clause is a significant factor in the court's § 1404(a) analysis." Jones, 211 F.3d at 499. Here, Plaintiff executed two agreements with the Company, the "First Amended and Restated Joint Venture General Manager Compensation Plan," and the "Employment Agreement JV General Manager." Each governed Plaintiff's compensation with the Company, and both stipulate that any dispute be brought in the State of Missouri. Because Plaintiff contractually agreed to resolve disputes regarding her pay, as here, in Missouri, not California, the instant case should be transferred, per the parties' intent. See Bereola v. Holland Am. Line, Inc., No. C 07-03770 SI, 2008 WL 149131 (N.D.Cal. January 14, 2008) (transferring case because of forum selection clause); Unisys Corp. v. Access Co., Ltd., No. C05-3378-THE, 2005 WL 3157457 (N.D.Cal. November 23, 2005) (ordering case transferred in part because of forum selection clause); Panetta v. SAP Am., Inc., No. C0501696RMW, 2005 WL 1774327 (N.D.Cal. July 26, 2005) (same).

### IV. CONCLUSION

Taking into consideration the foregoing facts, the scales clearly tip in favor of transferring this matter. The Court should therefore grant Defendants' Motion and transfer this action to the Eastern District of Missouri, Eastern Division.

Dated: March 19, 2008

Respectfully submitted,

*[signature]*
Margaret Hart Edwards
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
PANERA BREAD COMPANY, A
DELAWARE CORPORATION; AND
PANERA LLC, A DELAWARE LIMITED
LIABILITY COMPANY

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DS' NOTICE OF MTN & MTN; MP&A ISO MOTION TO TRANSFER VENUE
(Case No. 3:08-cv-1071-MEJ)

16